It pleases the Court, my name is Paul Turner. I'm with the Federal Public Defender Office in Las Vegas, Nevada. I'm here this afternoon to represent Mr. Kelly. As the Court is aware, there was one issue granted on the COA in this case, dealing with ineffective assistance for Mr. Kelly's attorney failing to investigate his case. The bottom line, actually, is Mr. Kelly's attorney did essentially nothing. Judge Goldberg Counsel, I'm a little lost on this, partly on the deficient performance prong and especially on the prejudice prong. Your case is that the lawyer should have interviewed Kelly's friend, who was the son of the victim. But I don't see an affidavit in the file from the friend saying, oh yeah, I would have talked to the lawyer and I would have told him this and that. Also, Kelly's lawyer already knew from the third friend, the other guy, that Kelly wasn't the shooter, and the judge said he didn't know who was the shooter. He wasn't blaming Kelly for being the shooter. And all you say the interview was for was to find out from the friend that Kelly wasn't the shooter. I can't see why it matters who the shooter is, since they had agreed to shoot before they went in. The judge didn't sentence on the basis that Kelly was the shooter. The lawyer already knew that the other robber said Kelly wasn't the shooter. I just don't understand why there's deficient performance or prejudice. MR. GOTTLIEB. Your Honor, I'd like to take those points and go for it. There is an affidavit in the record of an investigator in our office, Mr. Ed Hetty, went to the prison where Mr. Sean Dixon is currently residing, which is actually in this state, not Nevada. At least it was when he was interviewed. And Mr. Dixon indicated that he indeed would have testified if anyone had contacted him. He would have come to court and said that Lamar Alexander shot the victim. Mr. Dixon was never contacted by anyone. He would have been available because he had already pled guilty and been sentenced prior to Mr. Kelly's trial. He pled guilty in June of 1999, was sentenced in August of 1999, and Mr. Kelly's trial didn't occur until December 1999. So Mr. Dixon would have been an available witness. His case was completely over. He was beginning to serve his time. It's important who the shooter is, because the state indicated at trial, in order to convince the jury to convict Mr. Kelly of intentional first-degree murder, the state indicated that Mr. Kelly was the shooter. They're the ones who determined that that he was the shooter. They said it was clear. He was clearly the shooter. I want to read that affidavit. And frankly, the excerpts were too voluminous for me to use. So it was like having no excerpts. Give me the page number. Yes, Your Honor. It was ‑‑ there are actually a series of affidavits I'd like to point out to the Court. The one on Sean Dixon is at page 1094. It's in Volume 5 of the excerpts, page 1094. Mr. Hetty also did another affidavit, sort of gives you an overall background of his review of this, at page 1097. He also did an affidavit of Lamar Alexander, who at that time was in prison. That's at page 1092. Interestingly, Mr. Alexander at that time indicated that he had not seen Jeremy Kelly shoot anyone. I'd point out, Mr. Alexander ‑‑ I think the lawyer already knew that when Kelly went to trial, didn't he? Kelly's lawyer already knew that Alexander said Kelly wasn't the shooter. He ‑‑ I don't think he knew that, because I don't think he ever talked to Mr. Alexander. He may have known it from a police report. I know he didn't talk to Mr. Alexander. If he knew it, it was only from a police report. He knew from the police reports that no one had indicated at that time before trial that Kelly was the shooter. That's correct. And indeed, however, at trial, the most important person in the courtroom, with the exception of the judge, namely the prosecutor, the person charged, as we all know, was seeing that justice is done as their chief goal and chief obligation. I used to like to think when I was a criminal defense lawyer that I was the most important person, except for the judge. I'd like to think that, Your Honor, but I believe the person who was supposed to see that justice is done is more important than the advocate on the defense side. They're all important. Each piece of the puzzle has to work. But the prosecutor ‑‑ So he knew from the police reports that Kelly wasn't the shooter. Right. And he knew ‑‑ but unfortunately he didn't defend ‑‑ he didn't prepare to defend the case. And so when he got to court, and the state started ‑‑ I mean, not being the shooter, if you have one gun between the three of you, so you say, let's go in there and get the truck keys, and if he resists, we'll shoot him, and one of you ‑‑ and you only have one gun between the three of you, so that's your designated shooter, what does it matter whether Kelly is the shooter or not? I think, Your Honor, it matters, because the ‑‑ obviously the prosecution thought it mattered an awful lot, because they decided to say he was the shooter. But the judge didn't seem to think it mattered. Well, I think, with all due respect, and I appreciate ‑‑ He's the one that sentenced. The prosecutor didn't. Absolutely. What he was saying, Your Honor, I would submit, was not that it didn't matter who the shooter was, but that he had no evidence, nothing before him to distinguish Mr. Kelly from anybody else in this case. No one had helped him. Nobody provided any evidence. If Sean Dixon had been there, he would have said Lamar Alexander was the shooter. The judge was not provided any evidence that Lamar Alexander was the shooter. But the judge was ‑‑ the judge was presented at that trial with an argument that Mr. Kelly was the shooter. That was false. That was an absolute false statement. The prosecution ‑‑ The judge said he didn't know who the shooter was. Why would it have helped if the judge thought Alexander was the shooter? Because it would have distinguished ‑‑ he would have had some way to create a fair sequence of sentencing here. He would have had some way to figure out who the most culpable person was and who was less culpable. He had no way to do that, because no one gave him any evidence. He had no information about Mr. Kelly at all. However, it wouldn't have mattered how much investigation his counsel would have done. It wouldn't have revealed that Kelly wasn't involved in the planning. Isn't that correct? You had, actually, Your Honor ‑‑ He involved in the planning? Some witnesses said he was. Okay. And it wouldn't have mattered what was said. It wouldn't have revealed that he didn't possess a .22 at some time. Based on the evidence at trial, that's correct, Your Honor. It wouldn't have mattered how much investigation had been done. It wouldn't have revealed that he wasn't at Dixon's apartment on the day of the murder. Actually, it would have reflected one thing, very important, though. In our investigator ‑‑ Answer my question. That he wasn't in Dixon's apartment. He wasn't in Dixon's apartment on the day of the murder. He was there. Absolutely, he was there. And it wouldn't have mattered what investigation he had done. It wouldn't have revealed that he didn't flee from the place after the murder happened. Correct. So, with all of that, I'm back with my colleague. I'm having a tough time seeing how this investigation is prejudicial at all with all he was convicted of, since he was convicted of not only the murder, but the conspiracy, the burglary and the robbery, and then after that, what prejudice. Because the district court didn't say he was the murderer. He said he didn't know he was the murderer. But he said you were a part of the plot. You were one helping. Actually, of course, the jury found him guilty, obviously, Your Honor. Well, I understand. But I'm talking about the sentence. That's what we're ‑‑ No, I fully ‑‑ and I wanted to address the sentence, too. And I want to make sure I address every one of your questions on that. I will say one thing, though. Mr. Heddy's investigation, I represented that in my brief. If we had an evidentiary hearing, for example, if this court should order an evidentiary hearing here, Mr. Heddy would testify that when he interviewed Jennifer Diaz, Jensen Diaz, who was an extremely important witness, who was a witness to a number of the things Your Honor just mentioned, that she would indicate that in her presence, Mr. Kelly never indicated that he intended to kill anybody. That that was not true. No one ever talked to that woman before ‑‑ that young girl then before she testified. When lawyers don't interview witnesses, that's bad news for the defendant. I understand that. But I guess my worry is this. If I put that in perspective, and then I take this as a habeas case, okay? So we got a habeas case. We got a case that went in front of the district judge, went all the way through on appeal. Now it comes back, it's on habeas, and now it goes to the Supreme Court of the State of Nevada. And I'm supposed to find that there's something contrary to or involved in unreasonable application of clearly established federal law as determined by the Supreme Court. And I'm supposed to give deference now to the Nevada State Court on Nevada law, which as I understand it, and the Nevada law doesn't make, doesn't say that they have to prove he's the murderer. He can be the aider, the abetter, the conspirer, the felony murderer, get the same stuff. And I'm supposed to say they made a total unreasonable application of Supreme Court law. And how do I do that? You start in 1935, Your Honor, with Berger of the United States, with the simple concept that a prosecutor is supposed to see that the truth comes out, that justice is done. This Court has very graphically summarized that in the Thompson v. Calderon case. I realize that two members of this bench were on that embank panel. And that case is one of the best summaries. You mean the one where the Supreme Court reversed us? Well... It was a great abuse of discretion, that one. That was what I was... On other grounds, Your Honor. I hate to say that. On other grounds. I think they said it was a grave abuse of, they used the word grave. It was on other grounds, and I'm, and I don't, I'm well aware that there were different views on that Court, too, very, very appropriately. But that, that Court summarized, the writer of that opinion summarized the things, really going from Berger up through Napoui, up through any number of Supreme Court cases, that there's some basic concepts. We're different from other people. We have a simple little rule in America that you play fair. And when our prosecutors don't play fair, we hold them accountable for that. And when you present a case, you're supposed to tell the jury the truth. The truth really matters in our jurisprudence. And when you tell a jury something that's just flat-out not true, and you're the prosecutor, you should be accountable for that. And that's what our Supreme Court case law holds consistently throughout. And, and here we have inconsistent theories. I'd like to just summarize it very, very briefly. In Lamar Alexander's case, beginning in, in November of 1999, initially, initially everybody here, I know the Court spent a lot of time today on, on information and complaints. These are all charges by information. They mean something. When a prosecutor signs that, that, that's saying that's true. That's not some joke document. That's not some, some document that's unimportant. That's saying that's true. It started out that they weren't sure who did it. They, they, they hedged in their first pleading against all of these people. But then they got very, very specific. With Mr. Alexander, commencing in November of 1999, they filed an information saying that he shot the victim here. He killed the victim here. They had a plea deal with him on that basis. He signed it. They signed it. So as late as, as March of 2000, Mr., Mr. Alexander, his lawyer, and the prosecutor were all on board that he was the shooter. Well, let me ask you a question. As you go through there, I mean, this is the one I look for. What case says to me that the prosecutor can't charge contradictory facts if there's reasonable doubt as to those charges? I mean, what case suggests that a prosecutor's got to determine for, for sure he's the shooter, or for sure he's the shooter and not charge? It doesn't seem to me that I could find such a case. And secondly, especially given Nevada's statute, and now we're looking again at the standard of review, that says under Nevada law, you can prove aiding and abetting, conspiracy, felony murder, and they all get the same. It's true. When you sign, I don't know that I can say that I know a case directly on point. I think any, I think any fundamental due process case, when, when you sign the piece of paper in November of 1999, a month before you're going to try Mr. Kelly, you're the prosecutor. You signed the piece of paper saying Mr. Alexander did the killing. It's your name on it. You signed it. A month later, you go to trial on another man, Mr. Kelly, and you tell the jury, it's clearly, clearly Mr. Kelly who did it. You just signed that paper a month earlier saying somebody else did. That is wrong. That's a violation of due process. That's not fair. So I, I am inclined to agree with you on that, but are we considering reversal on the basis of prosecutorial misconduct? Your Honor, that, that, there's no COA granted on that, and I can't argue for that, obviously, within the rules. If the court would, would be so inclined to, to, to issue an additional COA, I would love to brief that. I guess I was just pointing out. No. You're absolutely right, Your Honor. I'd love to brief that, to be real, real honest. I'm sure you know I would, too. But I'm, I'm, I'm sorry, Your Honor. I do have one very important thing I want to add. One, one pleading that's really important in this, it's a very interesting pleading. Against Mr. Dixon, the State sought the death penalty. And I think most, most lawyers and judges would agree that that's a real important document when you sign something saying you're going to seek the death penalty against somebody. Well, in that document that they sought against Mr., Mr. Dixon, they indicated in that document, and this is in early 1999, that it, that it was Mr. Alexander who did the shooting. So in, in a, in a very, very important document they file, they say Alexander does the shooting, and yet they can go to trial with Kelly. I got a problem, I got a problem even with that. I have a problem at every step. I have a problem with you saying that the document says that Kelly didn't shoot him. It says Lamar Alexander, here's the plea agreement, Lamar Alexander did then or there and with Kelly and feloniously kill Terry Dixon by shooting at or into the body of the said Terry J. Dixon. It's not descriptive beyond that. That certainly takes responsibility for shooting. However, he'd be responsible for shooting whether he shot the gun or not if he was one of a group of three men or, or, or three youths who went into the house and shot him having planned to do so. Now Diaz testified that she overheard four separate conversations where Kelly, Sean Dixon described their plans to take Terry's, Dixon's truck to a chop shop and if he resisted, shoot him. But your only argument as far as I can tell is that if the lawyer had only done more investigation, he would have been able to show that your fellow was not the shooter. It looks like it doesn't matter. It's not established that the prosecutor was lying because multiple people can be criminally responsible for the single shot fired into the victim's body. And as for him not being the shooter, well, suppose a mob boss orders one of his soldiers to shoot somebody, gives them a plane ticket and a clean gun and says, you fly, that's where he is, that's where he lives, that's what he looks like, you go there and shoot him. And then the mob boss is charged with the murder and he says, I wasn't the shooter, I was in a fancy hotel in the Bahamas at the time that the shooting took place in Nevada. I have nothing to do with this. It doesn't matter, he's still a shooter legally. In Nevada, you've got to prove, of course, to be an aider in a better that you have the specific intent to kill. There's been a lot of litigation. The hypothetical case I gave you obviously establishes that. I think there's doubt here about that. You have to prove beyond a reasonable doubt. I think based on what we submitted to the court, if Ms. Diaz had been interviewed, she would not have said what she said in court and she could have been effectively cross-examined. And I don't think there's any, if we ever had a hearing, if you get her in a room, in a courtroom, I think she would say. She was cross-examined in court though, wasn't she? Without ever interviewing her. I mean, that's like a blind man, you know, walking off a ledge. The theory is if the lawyer had interviewed Diaz, the cross would have gone better. Yeah, he would have known that what she said was not true. That what she said was not accurate. Who knows what's ever true in cases? You're saying the cross would have gone better. Cross would have gone a lot better. When you interview witnesses, cross tends to go a lot better. I mean, she's perhaps more likely to be lying to the defense investigator, not under oath, than she is in court when she's under oath and subject to perjury penalty. A long time's gone by, Your Honor, and sometimes people are more truthful later when stresses and pressures are off, and they're a little older and mature. She was a teenager then. We would very much like to have a hearing. I know my time is getting down here. My colleague on the other side has indicated that I've improperly demeaned the defense lawyer in this case. If that indeed was true, and I submit it's not true at all, but if it was true, the answer to that is let's have a hearing. Let's get the defense lawyer in a room under oath and let's find out. Let's go. Let's have a hearing. And that's what we would like, at least, to have a hearing here. Mr. Kelly was 15 years old when this happened. That doesn't excuse anything. But all of us in here were 15 at one time. And some of us remember how we acted at 15. We also remember we made mistakes at 15. Some of us didn't have to pay the price. And I'm not excusing Mr. Kelly. Shooting somebody to steal his truck is not just a mistake. It's not a mistake. It's a very, very, very serious act as found. But there should be a very strange case that the shooter, Mr. Alexander, who we all know was the shooter, frankly, Mr. Alexander is not in prison any longer. He's out on the streets. He could be in San Francisco today. Something is wrong with this case. Something is wrong. And at least a hearing to let us talk to the lawyer about what happened here, I would ask the court to please give us a chance to do that. I don't know if I have any rebuttal. It looks like I'm on read, Your Honor. If I do have rebuttal, I'd like to come back. But if I don't, I understand. I know the court's been very patient. Thank you. Thank you, counsel. Good afternoon. May it please the court. My name is Tom Gover. I'm with the Nevada Attorney General's Office, and I represent Budge on this particular case. I would like to point out, as has already been pointed out by Judge Smith, that this is a Supreme Court that has directly dealt with this question of an effective assistance to counsel. They cited Strickland. It doesn't take a brain surgeon to figure out if Strickland is going to apply. And they also cited that under Strickland, we can deal with this on the prejudice prong, or we can deal with the conduct of the attorney prong. And they chose to deal with it on the prejudice prong. They looked at the case. They found as to failing to investigate who was the trigger man, if we can look at that issue, that it was not prejudicial that the state proceeded under multiple theories that Kelly was a trigger man or that he aided and abetted conspiracy felony murder, and found that given that permissible charging of an open murder rule, and presenting that evidence, that that was permissible and there is no prejudice. It is troublesome to me that Lamar Alexander, the actual shooter, is now out, and we have Mr. Kelly serving two consecutive life terms. Well, I'd like to address that. We've dealt with some argument, or there's been some argument that Lamar Alexander, he's the guy that shot the guy. I don't think anybody, aside from Dixon, Alexander, and Kelly, and if you get them on a good day, maybe they'll tell you who was the guy who actually shot Terry Dixon, who was Sean Dixon's father. There was some testimony here, or not testimony, some argument about how the prosecution made a point of emphasizing that it was Kelly. Kelly was a shooter. If we look at the whole context of the argument of the state to the jury, I believe it starts in Excerpt of Record 170 and goes through 182, the prosecutor systematically goes through each of his four theories. And he says, it doesn't matter which theory that you're going to use, all roads lead to Kelly, Kelly being guilty of first-degree murder. And he does talk about him being the trigger man. But specifically, and I can give you the pinpoint site of the prosecutor's closing. Does he insist that Kelly was the shooter, or does he say it doesn't matter? I would characterize it as he vouched that that's the theory that he likes the best. But at 178, lines three through four, it doesn't really matter, because he was also there aiding and abetting someone else to do the same. Whether Sean or Lamar, that's EOR 178, lines three through four. EOR 182, he goes on and says, but, you know, no matter who shot, this person is guilty of first-degree murder. And so I'm a little troubled that Alexander's out, too. I guess my trouble is more that he's out than that Dixon is in. Right. Well, and you have to look at these three defendants, although that they started off similarly situated, they didn't end up similarly situated. It looks like you do your time there for making the prosecutor work for a living instead of for killing somebody. Well, and you do have to realize Lamar Alexander pled guilty to second-degree murder. He was given a 10 to life. Second-degree. Second-degree, not first. And so he's not situated the same way as Dixon and Alexander or Dixon and Kelly as far as sentencing was concerned. Well, why not, from the factual situation that occurred? Well, like I said, the factual situation as far as who was the shooter, we're not exactly sure who was the shooter. I would suggest after going through a trial where, and this is where I would differentiate the Stromberg claim that Kelly is making now, we had one trial. We didn't have two trials where we had inconsistent factual theories being put forward. After the one trial goes forward and you burn your witness like DeQuincy Taylor, who kind of reneges on the stand about how at the preliminary hearing he said that it was Lamar that did the shot, but now he's not sure because the flash came from that area. And you put all your eggs in one basket and vouch for the idea that, you know, I have these four theories, but I'm kind of leaning toward, I'm thinking, Kelly is the shooter. How are you going to present that case the next time around? Never mind it being fundamentally fair presenting inconsistent theories, but from a prosecutor's standpoint, I'm going to now put on a death penalty case, first-degree murder case against Alexander and now say that he's the shooter. I just shot that. You know, it's already done because we already had the Kelly trial. And so I think that gives us some insight into a couple things. Why was Alexander treated differently? He was the last guy. A lot of things happened prior to him resolving his case that maybe resulted in a more favorable resolution than for his other co-defendants. The other thing that... Which occurred first? Which case settled first? Kelly or the plea? Kelly's trial was in December of 99, and he was sentenced in March of 2000. And the guilty And so it wasn't until the Kelly case was completed that the state and Lamar Alexander actually sat down and put pen to paper and had a resolution of their case. The most usual reason for someone having a lesser sentence because of a plea is because they're pleading for making the government not prove its case and also helping, usually, to convict somebody else. Here it's reversed. Yeah, here, I don't think that there was any help that was provided by Alexander to the state to get the conviction against Kelly. I really don't understand the differences. Well, except from the standpoint of, as I had previously stated, the evidence had been pretty much used up. I mean, the prosecution is really put in an incredible position that once they've argued that Kelly was the shooter, the murderer, now they're going to present that inconsistent theory against Lamar Alexander. But there were the same charges of conspiracy, aiding and abetting, and so forth, felony murder for Alexander as for Kelly. That's correct. So why all of a sudden a plea of guilty on the same circumstances that Kelly was sentenced on? Right. Were there two different judges? Well, no, it was two different pleas. I mean, because Kelly entered into a plea of second degree murder. I haven't developed the facts, and I'm not sufficiently aware of the record to tell you if Kelly was offered some sort of a plea offer and he didn't take it, or if Dixon was offered some sort of a plea offer and didn't take it. But that's not an area of these cases, these three cases here that I really delved into. So I would only be speculating as to why things worked out so well for Lamar Alexander. But to quote the prosecutor in this case, and I think what you're saying also is, who was the trigger man, it really doesn't matter. The prosecutor, I've already given you- The judge's words on that issue? The judge's words at the time of sentencing? Yes. Regarding when- Who was the shooter, whether it mattered? I couldn't use the excerpts in this case. They were too thick to handle. I'm sorry. And I probably didn't help anything. I added the supplemental excerpts of records, but I was just trying to give the court some insight into the testimony of Booth and those people. But as far as the sentencing judge, there was a comment about how he didn't know who the shooter was. And so he was going to treat- I just thought you might have it right in front of you, all tabbed, and you could just read the words. I have- let's see, the- I've looked at that like a hundred times. Oh, volume 1206. I believe that's it, Your Honor. Yeah, this is the sentencing. I cite to 206 just because in there the point that I was making for my own purposes- Oh, so you're quoting yourself there rather than- No, no, no, no. My citation to myself was the portion of the sentencing that I think is important to me. It starts at 206. If you want to know the whole- I just want to know what the judge said. The judge said, I think it's only fair of the system to impose the same sentence upon you as I impose upon your co-defendant in this case because taking everything into account, we still are not 100% positive who actually pulled the trigger, we being the criminal justice system. That's 206 lines 7 through 13. And so that coincides with what I had previously represented to the court, is nobody really knows who shot who. Okay, so that's the answer on the prejudice on sentencing. The other issue on prejudice is Kelly says, my cross of Diaz would have been a lot better if my lawyer had interviewed her before she testified against me. What is the evidence of lack of prejudice on that? Well, on Diaz, actually the court dealt with that lack of investigation from a different The sixth point, they talked about how Kelly claimed that counsel was ineffective for failing to interview witnesses. And the claims that were dealt with, or the claims that were identified by the court dealt with Taylor and Dunheim, Carrie Booth, who would have undermined the list of other people who were identified by Kelly as people who should have been interviewed. The court found that as to some of these potential witnesses, that the claims were directly belied by the court record. This is both Booth and Diaz also testified that they had heard Kelly participate in a conversation in which it was discussed that the group would kill the victim if he resisted during the robbery regarding the other potential witnesses. Kelly failed to show that the jury had been presented with evidence that Sean had previously stated he wished to kill his father. It would have changed the outcome of the trial. And so, you know, the court basically dealt with those issues of failure to interview witnesses by saying, Hey, we have there. I guess the cross would have been Ms. Diaz. Isn't it true that you talked to my investigator on such a date? Yes, Mr. So-and-so. Yes. And he took a statement from you. Yes. And you told him that Kelly, what? Well, I mean, as far as we're concerned, you know, it would have been a long line. I wasn't there. We're talking about investigator Hedges. Well, you know, this record, which is too voluminous for me to lift. Right. So I would just basically that it would be consistent with her affidavit. Okay. I would resist that. But I would basically say, you know, even if the state, she said, you know, Kelly was there, but he didn't say these things. Oh, he was there. He heard everything. He's saying the affidavit in the affidavit. That's him. What did she say in the affidavit? I'm not sure. There's an investigator's affidavit, I think. Right. Ed Heddy Diaz. And the investigator quotes Diaz, I think. Yes. I want to know. Which I would note is hearsay. Investigator and when. Let's see. I contacted and interviewed. We're looking at EOR 1000. I contacted and interviewed Jennifer Jensen Diaz, a prosecution witness. Jennifer told me she was never contacted and interviewed. And I don't see any further reference. I mean, to aid the court, the affidavit of Ed Heddy, which, you know, obviously, as you've already pointed out, wasn't taken in open court, not subject to cross-examination. I still want to know what she said. I just couldn't find it because the excerpts were so voluminous. The affidavit. Trying to figure out if it's prejudicial that he didn't interview her. So it would be easier if I knew what she said. And I can't tell you what she said from this affidavit. Maybe just show him the page number. Oh, so it's not in the affidavit. Oh, wow. Well, and your honor, I mean, Miss Diaz, we did attach in our supplemental excerpt of records her direct examination. You know, that's it's a relatively short portion of it. It's pages 65 through 95. You know, she testified that even after the shooting, she talked with Jeremy Kelly about how the murder of Terry Dixon went or how things happened. And Diaz testified that Kelly summarized the events and stated that everything went down as planned, you know, suggesting that, you know, as she had previously testified, they had met in Carrie Booth's garage and in her room and they talked about these things and they showed the weapons and all of in finding that there would have been no prejudice or there was no prejudice in the failure or alleged failure of defense counsel to not investigate the witnesses that were identified. They also found that not investigating who the trigger man was not prejudicial due to the alternative theories that were pled. And so, you know, trying to bring us to a close, this is a habeas case. Those on those two points, the Nevada Supreme Court correctly identified Strickland, correctly dealt with the ineffective assistant counsel claims on an alternative basis is completely silent on the question of the reason reasonableness of the representation of counsel dealt with it exclusively on on the concept of prejudice, which is not an unreasonable application of federal law. And the facts behind the Nevada Supreme Court's decision is not an objectively unreasonable application or view of the facts applying to the law. Did the same attorney bring the matter before on appeal to the Supreme Court? Yes. Another little factual question. What's the same trial judge that handled both Lamar Alexander and the Kelly case and sentenced under that Lamar Alexander and Kelly, the Lamar Alexander. Let's see. Quick reference to the record with my notes. So I don't know the answer to that off the top of my head, although. Oh, that's right here. Kelly was sentenced. Judgment of conviction is on 210. That was in District Court District Court 16. Alexander entered his guilty plea. That's an excerpt of record 631. And that occurred in this in Court 16 will be the same court. 16. So, yes, it was the same court, Your Honor. The opposing counsel know that same judge. Yes, Your Honor. They're banging out of both. McCarty. Oh, my God. Oh, in fact, he had all three, right? Yes. In fact, that's why he said, I'm giving you the same sentence I gave to Dixon. That's correct. I'm knowing who did the shooting is the same guy. That's right, Your Honor. I don't have any further presentation unless there's any other questions. Thank you, counsel. Thank you. Try to keep it to 30 seconds. I wanted to be sure the court knew that there was a lesser sentence available here. A term of years, 20 to 50 years. I wanted to be sure the court knew that he didn't have to sentence life with. He could have gone lower than that. He was never. That was never mentioned to him. And I just like to leave my theory of what the judge was at here at sentencing. I think what he was saying was until I know who the shooter is, I'm fearful of dropping any sentence on anybody, particularly if I find out later that that was the shooter. I think that was the doubt he had. And that's why he was he was afraid if Mr. Dixon had walked into court under oath and said, I saw the shooting and it was Lamar Alexander, I would submit to the court that Mr. Kelly would not have the sentence he has now. Also, finally, and I did not put this in my excerpts. I didn't realize. In fact, I hadn't read it that closely. There is a there is a section of the record which where Judge McCordy deals with with his treatment of Mr. Alexander. If the court was interested in that, I'd be happy to submit a supplemental on that. It's fairly detailed and and of some interest if the court was wanted to get a better understanding of that. I didn't. We'll issue an order. I'm sorry. If we want it, we'll issue an order. Thank you. Thank you, counsel. Kelly versus Fudge is submitted and we are adjourned for the day. Mm hmm. Let's see here though. That's how it was, yeah.
judges: Hug, Kleinfeld, Smith